Thomas C. Seabaugh, State Bar No. 272458
THE LAW OFFICE OF THOMAS C. SEABAUGH
333 South Grand Avenue, 42nd Floor
Los Angeles, California 90071
Tel: (213) 225-5850
Email: tseabaugh@seabaughfirm.com

T. Kennedy Helm, IV State Bar No. 282319
Helm Law Office, PC
644 40th Street, Suite 305
Oakland, CA 94609
Tel: (510) 350-7517
Email: kennedy@helmlawoffice.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE LYNN WEBB, individually and as successor-in-interest to Keith Roy Webb | Case No.    5:22-cv-1448 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. 42 U.S.C. § 1983 – Survival and Wrongful Death |
| COUNTY OF SAN BERNARDINO; SHERIFF JOHN MCMAHON, UNDERSHERIFF SHANNON DICUS, CAPTAIN JEFF ROSE, LIBERTY HEALTHCARE OF CALIFORNIA, INCORPORATED, a California corporation; and DOES 1–40, | 2. 42 U.S.C. § 1983 – Deprivation Of Familial Relationship; |
| | 3. 42 U.S.C. § 1983 – Entity and Supervisory Liability; |
| Defendants. | 4. Cal. Civ. Code § 52.1; |
| | 5.  Negligence and Breach of Mandatory Duties |
| | **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. This is a civil-rights, wrongful-death and survival action arising from Defendants' deliberate indifference to the serious, emergent medical and mental-health needs of Keith Roy Webb, a 32-year-old pretrial detainee in the custody of the County of San Bernardino at the San Bernardino County West Valley Detention Center. Mr. Webb, a person with a long history of heroin addiction, was booked into the West Valley Detention Center on July 6, 2021. At the time, Mr. Webb was detoxifying from heroin, and he was evidently improperly screened for mental-health issues, and for the risk of self-harm due to opiate detoxification, and he was inappropriately put in restrictive housing. During the four-day incarceration before his death, Mr. Webb was apparently not provided with Medication Assisted Treatment (MAT), as his toxicology report shows, and so he likely endured untreated detoxification from heroin, which is a well-known cause of suicide. On July 10, 2021, Mr. Webb was found to have hung himself from his bunk bed with a sheet, resulting in hypoxic encephalopathy. Mr. Webb died from his injuries on July 12, 2021 at Kaiser Foundation Hospital-Fontana.

2. Plaintiff Carrie Lynn Webb, his mother, contends that his death was unnecessary and preventable. The County controls the relevant facts regarding Mr. Webb's suicide. The County has refused Plaintiff's counsel's request for access to material information regarding Mr. Webb's suicide. Therefore, Plaintiff does not know the precise cause or causes of Mr. Webb's suicide, but believes that the allegations in this Complaint will have further evidentiary support after a reasonable opportunity for investigation and discovery.

**JURISDICTION AND VENUE**

3. Carrie Webb brings this 42 U.S.C. § 1983 civil action seeking damages for deprivations of constitutional rights secured by the Fourteenth Amendment of the United States.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343. The state-law claims are so related to the § 1983 claims that they form part of

1  the same case and controversy and are therefore within the Court's supplemental
2  jurisdiction under 28 U.S.C. § 1367.

3      4.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because all
4  incidents, events, and occurrences giving rise to this action occurred in the City of
5  Rancho Cucamonga, County of San Bernardino, State of California, and within the
6  Eastern Division of the Central District of California.

7                              **PARTIES**

8      5.     Plaintiff Carrie Lynn Webb is the mother of Keith Roy Webb. She
9  brings this action individually and as her son's only successor in interest under
10 California Code of Civil Procedure § 377.32 (declaration filed concurrently
11 herewith).

12     6.     Defendant County of San Bernardino is a California general law
13 county operating as a local government entity and not an arm of the State of
14 California for Eleventh Amendment purposes. The County operates and manages
15 the San Bernardino County Sheriff's Department, which in turn operates the jail
16 system, which includes the San Bernardino County West Valley Detention Center.

17     7.     At all material times, until about July 16, 2021, Defendant John
18 McMahon served as the Sheriff of San Bernardino County. As Sheriff, Defendant
19 McMahon was the final policymaking official for the County's jail system,
20 including its customs and policies on: restrictive housing; provision of mental-health
21 care to pretrial detainees, including suicide prevention for those detoxifying from
22 opiates; and detoxification treatment, including MAT. Defendant McMahon is being
23 sued in his individual capacity.

24     8.     At all material times, until about July 16, 2021, Defendant Shannon
25 D. Dicus served as the Under Sheriff of San Bernardino County. As the Under
26 Sheriff, Defendant Dicus was a person to whom Defendant McMahon delegated
27 authority for implementing the County's customs and polices on restrictive housing;
28 provision of mental-health care to pretrial detainees, including suicide prevention

1   for those detoxifying from opiates; and detoxification treatment, including MAT.

2   Defendant Dicus is being sued in his individual capacity.

3        9.     At all material times, Defendant Captain Jeff Rose was the

4   commander of the West Valley Detention Center, and a person to whom Defendants

5   McMahon and Dicus delegated authority for implementing the County's customs

6   and polices on restrictive housing; provision of mental-health care to pretrial

7   detainees, including suicide prevention for those detoxifying from opiates; and

8   detoxification treatment, including MAT. Defendant Rose is being sued in his

9   individual capacity.

10        10.    Defendant Liberty Healthcare of California, Incorporated, was, at all

11   times mentioned herein, a California corporation licensed to do business in

12   California. At all material times, Defendant Liberty Healthcare of California, Inc.,

13   has been the County's subcontracted provider for mental-health care in the County's

14   jails, including assessing and treating pretrial detainees at risk of self-harm from

15   opiate withdrawal, and for provision of detoxification treatment, including MAT.

16        11.    The true names of Defendants Does 1–40 (the "individual

17   defendants") are unknown to Plaintiff, who therefore sues these defendants by

18   fictitious names.  Plaintiff will seek leave to amend this complaint to show the true

19   names and capacities of these defendants when they have been ascertained.  Each

20   fictitiously-named defendant is responsible in some manner for the conduct and

21   liabilities alleged herein, either as a direct or integral participation, by reason of that

22   individual's failure to intervene, or that individual's supervisory role.

23        12.    At all relevant times, the individual defendants were agents or

24   employees of the County or Liberty Healthcare of California, Inc. To the extent they

25   were independent contractors, the County is responsible for their actions under

26   principles of non-delegable duties. At all relevant times, the individual defendants

27   acted under color of state law and within the course and scope of their employment.

28   All individual defendants engaged in, integrally participated in, and failed to

COMPLAINT FOR DAMAGES

intervene to prevent the conduct of which Plaintiff complains, and engaged in other wrongful acts or omissions as alleged below.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Plaintiff timely presented her claim for damages pursuant to Section 910 of the California Government Code on January 7, 2022. The Claim was denied on February 16, 2022. This lawsuit is timely brought within six months of the rejection of that claim.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

14.     The San Bernardino County Sheriff's Department is in charge of mental-health and medical programs for pretrial detainees in its jails, including the West Valley Detention Center.

## Custom Of Restrictive Housing

15.     First, the County has a long-standing custom or policy of using restrictive housing. Restrictive housing—also known as solitary confinement, segregation, or isolation—is any type of detention that involves three basic elements: removal form the general population, whether voluntary or involuntary; placement in a locked room or cell, whether alone or with another prisoner; and the inability to leave the room or cell for the vast majority of the day.

16.     On information and belief, the County, including Sheriff McMahon, Under Sheriff Dicus, and Commander Rose, have known since well before Mr. Webb's suicide that the conditions in restrictive housing, including little or no out-of-cell time, may cause a pretrial detainee *without* psychiatric disabilities to develop them, or to become suicidal, especially where the pretrial detainee is also detoxifying from heroin or opiates.

## Custom Of Inadequate Mental-Health Staffing

17.     Second, the County has a long-standing custom or policy of failing to hire sufficient mental-health staff to provide competent intake/assessment and treatment. On information and belief, since before 2016, the County has not

1   employed enough psychiatrists and therapists to meet the demands of its jail
2   population. Without appropriate staffing, the County cannot implement the essential
3   components of a constitutional mental-health care delivery system.

4          18.     On or about August 23, 2016, knowing of the staffing deficiency,
5   Sheriff John McMahon sought approval from the County's Board of Supervisors to
6   increase the value of the contract with Liberty Health Care Corporation by
7   $14,161,308.00 from $3,047,314.00 to $17,208,62.00 and to change the one-year
8   term of the contract to a three-year term. The amended contract with Liberty
9   Healthcare Corporation was to provide mental-health services in the County's jails,
10  and specifically to provide comprehensive mental health care and programming
11  services in the county's correctional facilities. Between 2016 and 2021, the value of
12  the contract increased. On or about June 8, 2021, a little over a month before Mr.
13  Webb's suicide, Sheriff McMahon sought and obtained approval of the County
14  Board of Supervisor to increase the of the County's contract with Liberty Healthcare
15  to a maximum amount of $73,734,486.00.

16         19.     On information and belief, due in part to mental-health staffing
17  deficiencies, suicides occurred at the County's jails after the 2016 contract and
18  despite continued increases in available funds for mental-health staffing.

19         20.     On or about February 25, 2017, inmate David Damits, housed alone
20  in a single-man County jail cell, was found hanging from the top bunk and was
21  pronounced dead at the scene.

22         21.     On or about September 24, 2017, West Valley Detention Center
23  Albert Snell hung himself by a sheet from the top bunk of his cell. Snell was taken
24  to the hospital, where he later died.

25         22.     On December 14, 2018, the Court in *Turner v. County of San
26  Bernardino* No. 5:16-CV-00355-VAP (DTBx) (C.D. Cal.) signed a consent decree
27  entered into by the County and inmate plaintiffs to, among other aims, ensure the
28  provision of constitutional mental-health care in the jails and to address the use of

restrictive housing in the jails. *Turner v. Cnty. of San Bernardino*, No. 5:16-CV-00355-VAP (DTBx), 2018 WL 6617638, at *1 (C.D. Cal. Dec. 14, 2018).

23.     As part of the 2018 consent decree, the County's Sheriff's Department agreed to hire sufficient nursing staff such that registered nurses—and not correctional staff—perform all medical and mental-health intake screenings, including suicide-risk assessments, at the County's jails, including the West Valley Detention Center.

24.     On information and belief, Defendants McMahon, Dicus, and Rose continued to fail to ensure that mental-health staffing comported with the consent decree.

25.     On February 20, 2020, the *Turner* Court entered an order regarding mental-health staffing at the County's jails. Pursuant to it, the County, agreed to use all reasonable means to recruit, hire, and train 20 mental clinicians authorized by the San Bernardino County Board of Supervisors at its January 7, 2020 meeting. *See* Dkt. 108, p. 2, ¶ 4. The County also agreed, "[c]oncurrently with the efforts to recruit, hire and train the 20 mental health clinicians authorized in January 2020 and continuing thereafter, the Sheriff's office and its contractor Liberty Health shall take all reasonable steps to recruit staff to fill the proposed additional 39.81 mental health positions. *Id.* at ¶ 5. The Sheriff's Department and Liberty Health had as their goal "recruiting and prospectively hiring staff to fill as many of the additional positions as reasonably possible so that such staff are available to commence work effective July 1, 2020 in the event the BOS approves the funding for such positions." *Id.*

26.     Nevertheless, on information and belief, the County's Sheriff's Department continued to fail to hire enough mental-health staff, despite knowledge of the need for such staffing.

//
//
//

COMPLAINT FOR DAMAGES

## Custom Of Inadequate Screening

27.     Third, on information and belief, historically pretrial detainees on arrival at the West Valley Detention center are screened by untrained correctional officers—and not health care professionals—for health-care symptoms, including for mental illness and suicidality and drug withdrawal. If the County's screening correctional officer manages to identify a person as mentally ill or at risk for suicide or self-harm from withdrawal, that person is referred to mental-health staff for an evaluation. These evaluations are often delayed and never occur, or if they do occur, they are incomplete and inadequate. If the clinical evaluation occurs, it seeks only to find out if the person has a history of psychiatric medications, and it ignores the other necessary components of an adequate assessment, such as current symptoms, substance abuse, social history, and suicide history.

28.     As part of the 2018 *Turner* consent decree, the County also agreed to expand the intake screening questionnaire, to conform to National Commission on Correctional Healthcare (NCCHC) standards, and to include specific questions regarding suicide risk factors, withdrawal risk factors, a detailed mental-health history, a mental-status exam, and a disposition status for withdrawal management.

29.     On information and belief, however, the County continues to allow unqualified personnel to perform screenings.

## Custom Of Failing To Provide Medication Assisted Treatment To Detoxifying Opiate/Heroin Users

30.     Fourth, the County has developed a custom of failing to adequately assess, manage, or treat individuals suffering from substance withdrawal complications. The County's policies and practices regarding withdrawal do not conform to the professional standards of care.

31.     The County has a custom of failing to refer pretrial detainees who are detoxifying from heroin or opiates for Medication Assisted Treatment (MAT). Clinically driven and tailored to meet each participant's needs, MAT programs treat

addiction to opiods, such as heroin and prescription pain relievers that contain opiates, as well as synthetic opiates, such as Fentanyl. MAT's prescribed medication normalizes brain chemistry, blocking the euphoric effects of opiods, relieving physiological cravings, and normalizing body functions without the opiod's negative and euphoric affects.

32.    MAT is required treatment because individuals with opiod use disorder often experience debilitating symptoms when undergoing opiod withdrawal—including uncontrolled pain and psychological distress—that may trigger suicidal ideation, especially during the first week of incarceration, if not properly treated.

33.    On information and belief, at all relevant times, Defendants McMahon, Dicus, and Rose knew that a jail fails to protect inmates from harm where it fails to provide MAT to individuals at a significant risk of harm from opiod withdrawal.

**Custom of Failing To Provide Timely Access To Adequate Care**

34.    Fifth, the County has a custom of not having a functioning system to ensure timely access to mental-health care. On information and belief, historically the primary way for pretrial detainees to request health care is to give a Health Service Request form ("HSR") to a correctional officer. The information is the HSR is not private. Therefore, the practice deters people from asking for help because custody staff may review their private health information; many HSRs have also been lost or destroyed before reaching mental-health care staff.

35.    The County provides only limited and insufficient mental-health treatment options for pretrial detainees. The County's sub-contractor for mental-health care, Liberty Healthcare and its employees, provide limited mental-health care. They do not provide counseling or therapy. Instead, Liberty Healthcare employees provide a brief, non-confidential, cell-front visit by a clinician, accompanied by at least one correctional deputy, to assess if a pretrial detainee has

acute mental-health symptoms. The visit, if it occurs at all, will occur several weeks after a person first has requested help. Liberty Healthcare employees do not provide pretrial detainees with practical skills to help them cope with their symptoms or living conditions, including being locked in their cells for 23 or more hours a day on restrictive housing.

### Custom Of Failing To Review Suicides

36.     Sixth, the County has a custom of failing to adequately review, document, or correct any deficiencies in mental-health care. On information and belief, historically, for suicides, the County's practice has been to gather records regarding the death and then to confer with its attorneys, to primarily assess liability. The County does not document findings or conclusions from the record review nor does it document a plan for corrective action; conduct a psychological autopsy of any suicide; or interview or meet with custody and health-care staff who may have been involved in a suicide. The County's failure to implement an effective death review and quality-assurance program results in a substantial risk of harm of preventable injury and death from suicide.

37.     On information and belief, by 2021, the County continued to employ the above unconstitutional customs and policies, which were the moving force in continued suicides at the County's jails.

38.     On or about March 22, 2021 Casandra Pastora was removed from a ventilator and died after having committed suicide by self-asphyxia while housed at the West Valley Detention Center. On information and belief, Ms. Pastora's suicide was not reviewed by anyone from the County.

39.     On or about July 6, 2021, Keith Roy Webb was booked into the West Valley Detention Center on a felony charge of California Health & Safety Code § 11351 (unlawful possession/purchase for sale of a narcotic/controlled substance). Mr. Webb had struggled for years with addiction to heroin and

amphetamines, and when he was booked into the jail, he showed signs of active detoxification from heroin.

40.     On information and belief, Keith Roy Webb was apparently incompetently assessed for risk of harm as a result of opiate withdrawal and suicide by DOE Defendants 1–40, either correctional deput(ies) or unqualified, non-registered-nurse Liberty Healthcare clinician. Mr. Webb's intake likely did not comply with the consent decree's screening requirements to assess mental-health needs, including risk of harm from withdrawal and suicide. As a result of the DOE Defendant's incompetent screening, Mr. Webb was not referred for a mental-health evaluation and was not put on any suicide precautions. On information and belief, a competent screening by a registered nurse would have uncovered facts revealing that Mr. Webb, actively withdrawing from heroin and presenting a depressed affect, was at risk for suicide.

41.     Mr. Webb, who was showing obvious signs of active detoxification from heroin needed to have been put on MAT. At no time, however, was Mr. Webb referred for MAT by DOES 1–40.

42.     Alternatively, and/or concurrently, a correctional deputy or a Liberty Healthcare clinician completed an intake for Mr. Webb indicating that he was at risk of harm as a result of withdrawal and suicide, and needed mental-health care and MAT, but failed to refer Mr. Webb for mental-health care or MAT or, if Mr. Webb was referred, he was never seen by a mental-health clinician because the County still has not brought its mental-health clinician staffing levels into compliance with the *Turner* consent decree.

43.     Alternatively and/or concurrently, correctional deputies DOES 1–40 may have ignored Mr. Webb's continued deterioration from detoxification.

44.     Alternatively and/or concurrently, one or more of Defendants DOES 1–40, with knowledge that Mr. Webb was detoxifying from heroin and at risk of

COMPLAINT FOR DAMAGES

self-harm, may have improperly classified Mr. Webb to put him in restrictive housing, which increased the risk of self-harm.

45. On July 10, 2021, at about 10:45 a.m., Keith Roy Webb was found hanging in his cell. On July 12, 2021, at Kaiser Foundation Hospital-Fontana, Keith Roy Webb died from his injuries. The death certificate indicates the immediate cause of death as hypoxic encephalopathy and hanging. The death certificate also indicates that Keith Roy Webb died at a County Correctional Facility and that he "hanged [him]self from [a] bunk bed with [a] sheet." Mr. Webb's toxicology report indicated that he had not been given any drugs associated with MAT.

46. The County and the individual defendants have a duty to prevent in-custody deaths, and specifically to prevent deaths like the death of Mr. Webb. The County's policies and procedures, as required by state and federal laws and regulations, do not suffice to prevent deaths in custody; fail in screening and classifying pretrial detainees for the risk of suicide; inappropriately put pretrial detainees in restrictive housing; fail to provide MAT to pretrial detainees detoxifying from opiates; fail to provide mental-health care; and fail to provide regular cell checks, and other precautions, to prevent the deaths of pretrial detainees.

47. Upon information and belief, the individual defendants responsible for housing inmates at the San Bernardino County West Valley Detention Center deliberately indifferent to the unreasonable risk of severe harm that Keith Roy Webb posed to himself. The individual defendants knew or should have known of the danger of self-harm. Knowing of the danger, these defendants were constitutionally obligated to exercise due vigilance to protect Mr. Webb from harm.

48. Because of the acts and failures to act of DOES 1–40, and because of the unconstitutional customs of the County, Mr. Webb committed suicide.

49. As to those individual defendants with supervisory roles, Defendants McMahon, Dicus, and Rose, Plaintiff alleges that these defendants directed their subordinates in the acts and failures to act that deprived Decedent and

Plaintiff of their Fourteenth-Amendment rights. Defendants McMahon, Dicus, and Rose set in motion a series of acts by their subordinates, or knowingly refused to terminate a series of acts by their subordinates, that they knew or reasonably should have known would cause the subordinates to deprive Decedent and Plaintiff of these rights.

50.    These supervisory defendants knew that their subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive Decedent and Plaintiff of these rights; and the supervisory defendants failed to act to prevent their subordinates from engaging in such conduct.

51.    The conduct of the supervisory defendants was so closely related to the deprivation of Decedent's and Plaintiff's rights as to be the moving force that caused the ultimate injury.

## **DAMAGES**

52.    As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff individually sustained the following injuries and damages, past and future, among others, funeral and burial expenses; loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support; and all other wrongful death damages; and Plaintiff's own anguish, pain, suffering, grief, sense of loss, and other forms of emotional distress, arising from the fact and manner of their loved one's death.

53.    As the Decedent's successor-in-interest, Plaintiff is entitled to recover damages for Mr. Webb's damages that survive his death, including his loss of enjoyment of life, pre-death pain and suffering, and punitive damages.

54.    Plaintiff  alleges claims for punitive damages and penalties allowable under 42 U.S.C. § 1983 and other state and federal law against the individual defendants only.

# FIRST CLAIM FOR RELIEF

## Fourteenth Amendment—Conditions of Confinement

## (42 U.S.C. § 1983)

(against individual defendants)

55.     The foregoing allegations are incorporated as if re-alleged herein.

56.     The Constitution's due process clause guarantees a pre-trial detainee like Mr. Webb the right to adequate mental-health and medical care where the County's failure to provide such care would amount to "deliberate indifference" to a serious medical need. Detoxification from heroin or opiates is a serious medical and mental-health need. The individual defendants, acting under the color of state law in their individual and personal capacities, deprived Mr. Webb, a pretrial detainee, of the rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution by failing to address the risk that his opiate or heroin detoxification and mental-health condition would lead to self-harm. The individual defendants were deliberately indifferent to the substantial risk that was posed, leading to Mr. Webb's death. Upon information and belief, each of the individual defendants participated or failed to intervene in the complained-of conduct of the others.

57.     Despite knowledge of the substantial risk of self-harm that Mr. Webb posed to himself, defendants did not take reasonable available measures to protect him, even though reasonable officers in the circumstances would have appreciated the high degree of risk involved—making the consequences of the individual defendants' conduct obvious.

58.     The individual defendants subjected Decedent to their wrongful conduct, depriving Plaintiff and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for the rights and safety of Plaintiff and Decedent.

59.     As a direct and proximate result of Defendants' acts and omissions as set forth above, Mr. Webb lost his life and his mother sustained injuries and damages as set forth above.

## SECOND CLAIM FOR RELIEF

### Fourteenth Amendment—Interference with Familial Relationship

### (42 U.S.C. § 1983)

### (against all defendants)

60.     The foregoing allegations are incorporated as if re-alleged herein.

61.     Plaintiff had a right under the Fourteenth Amendment to her parent/child relationship with her son that were infringed by his death.

62.     The acts of the individual defendants deprived Plaintiff of her particular rights under the United States Constitution were deliberately  indifferent to the substantial danger of self-harm to Mr. Webb. As a result, Mr. Webb lost his life.

63.     The conduct of the individual defendants was malicious, oppressive and in reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

64.     Upon information and belief, each of the individual defendants integrally participated in or failed to intervene in the complained-of conduct of the others.

65.     As a direct and proximate result of Defendant's acts and omissions as set forth above, Mr. Webb lost his life and Plaintiff sustained injuries and damages as set forth above.

//
//
//
//
//
//

-15-

### THIRD CLAIM FOR RELIEF

**Entity and Supervisory Liability**

**(42 U.S.C. § 1983)**

(against Defendants County, McMahon, Dicus, and Rose)

66.     The foregoing allegations are incorporated as if re-alleged herein.

67.     Plaintiff is informed and believes, and on that basis allege, that the County and its decision makers, including but not limited to the individual defendants sued in their supervisory capacities, Defendants McMahon, Dicus, and Rose, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Decedent and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, customs and usages of, among other things, each of the following:

a.     Failing to hire sufficient competent mental-health staff to screen pretrial detainees for risks of heroin/opiate withdrawal and self-harm, including suicide.

b.     Allowing untrained correctional deputies to screen pretrial detainees for risk of heroin/opiate withdrawal and self-harm, including suicide.

c.     Failing to have competent screening procedures in place, including by addressing the screening deficiencies identified in *Turner*.

d.     Placing inmates at risk of self-harm from heroin and/or opiate withdrawal in restrictive housing.

e.     Failing to have a functioning system to ensure timely access to mental-health care.

f.     Providing only limited and insufficient mental-health treatment options for pretrial detainees.

g.      Failing to provide pretrial detainees suffering from heroin or opiate withdrawal with Medication Assisted Treatment (MAT).

h.      Allowing deputies to not perform the adequate and timely safety checks required by Title 15 of the California Code of Regulations.

i.      Failing to adequately train, supervise and control employees in the proper classification and supervision of inmates to protect against self-harm required by Title 15 of the California Code of Regulations.

j.      Failing to adequately train, supervise and control employees to protect against signs of suicide risk.

k.      Failing to adequately train, supervise and control employees that they should identify, monitor, and provide treatment to those inmates who present a suicide risk.

l.      Failing to adequately investigate and, when appropriate, discipline or retrain correctional deputies and supervisors involved in misconduct.

m.      Condoning and encouraging correctional deputies supervisors in the belief that they can violate the rights of persons such as Decedent and Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

n.      Failing to analyze critical incidents such as this one and take appropriate corrective action to prevent recurrences.

The foregoing list is illustrative and not exhaustive.

68.      Defendants County and those individual defendants acting in their supervisory capacities promulgated, tolerated and applied, the policies, practices and usages alleged above, among others, which were a moving force that deprived Decedent of rights, privileges, and immunities secured by the Fourteenth-Amendment right to secure from inmate-on -inmate violence, as alleged above.

69.     Defendants disregarded the known or obvious consequence that the training deficiencies and omissions would cause the violation of the rights of individuals situated similarly to Plaintiff and Decedent.

70.     As a result of the policies, customs, practices and decisions, and training deficiencies alleged above, Decedent and Plaintiff suffered damages as alleged above.

## FOURTH CLAIM FOR RELIEF

### (Cal. Civil Code § 52.1 - Bane Act)

(against individual defendants)

71.     The foregoing allegations are incorporated as if re-alleged herein.

72.     By their acts, omissions, customs, and policies, Defendants, acting in concert, as described above, and with threat, intimidation, and coercion, violated Plaintiff's and Decedent's rights under Cal. Civil Code § 52.1 and the following clearly established rights under the laws and constitutions of the United States and California:

a.     Decedent's right to protection and to be free from unsafe conditions of confinement, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Sections 17 and 24;

b.     Plaintiff's right to be free from wrongful government interference with familial relationships and Plaintiff's right to companionship, society, and support with the Decedent, as secured by the Fourteenth Amendment and state constitutional provisions and  laws;

c.     The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1; and

d.     The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

73.     Upon information and belief, defendants had the specific intent to violate Mr. Webb's rights, and they violated his rights through their own intentional and volitional conduct, and with deliberate indifference to the rights and safety of Decedent. Their deliberate indifference, in and of itself constitutes threat, intimidation, or coercion under the Bane Act as interpreted by courts, and their willful conduct with knowledge that the deprivations of Decedent's rights would occur, or with reckless disregard for those consequences establishes the requisite specific intent for a Bane Act violation.

74.     To the extent this claim is based on a violation of Decedent's rights, it is asserted as a survival claim. To the extent that the violations of rights were done to Plaintiff, it is asserted by her individually and as a wrongful death claim. To the extent the violations were done to both Decedent and Plaintiff, it is asserted as an individual claim, survival and wrongful death.

75.     As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's and Decedent's rights under the United States and California Constitutions and law, Plaintiff sustained injuries and damages, and against each Defendant named in this Count, and are entitled to damages as set forth above, and punitive damages against all individual Defendants, but not the County, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, three times actual damages, and attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### Negligence and Breach of Mandatory Duty

(against individual defendants)

76.     The foregoing allegations are incorporated as if re-alleged herein.

77.     The individual defendants had a duty to conform their conduct to that of reasonably careful and prudent corrections officers, as such duties relate to the prevention and mitigation of harm to detainees.

-19-

78.     In committing the above-described acts and omissions, the conduct of the individual defendants fell below that of reasonably careful and prudent corrections officers.

79.     The agents and employees of Defendants County violated mandatory duties imposed on them by Title 15 of the California Code of Regulations, which provides minimum standards for local detention facilities such as the San Bernardino County West Valley Detention Center. These minimum standards that were violated include those governing classification of inmates to protect inmates from self-harm, and standards requiring meaningful safety checks.

80.     As a result of the negligence of the individual defendants, and the breach of mandatory duties, as alleged above, Decedent lost his life.

81.     The conduct of the individual defendants, and each of them,  and the breach of mandatory duties, were substantial factors in causing harm to Plaintiff and Decedent.

82.     The County is vicariously liable for the wrongful acts of the individual defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of their employment if the employee's act would subject him or her to liability.

83.     Plaintiff seeks compensatory damages and punitive damages under this claim.

84.     Plaintiff seeks survival and wrongful death damages, punitive damages, and attorney fees under this claim, which she brings individually and as a successor-in-interest to her son.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and requests entry of judgment in his favor and against all defendants as follows:

1    A.    All general damages, including survival and wrongful death

2 damages, in amounts according to proof;

3    B.    Special damages in amounts according to proof;

4    C.    Exemplary and punitive damages against the individual

5 defendants in amounts according to proof;

6    D.    Costs of suit;

7    E.    Attorney fees under 42 U.S.C. § 1988 and applicable state law

8    provisions; and

9    F.    Such other relief as may be warranted or as is just and proper.

10 DATED:  August 16, 2022        LAW OFFICE OF THOMAS C. SEABAUGH
                                 HELM LAW OFFICE, PC
11

12

13                               By */s/ Thomas C. Seabaugh*
                                    Thomas C. Seabaugh
14                                  Attorneys for Plaintiff

15

16             **DEMAND FOR JURY TRIAL**

17    Plaintiff hereby demands a trial by jury.

18

19 DATED: August 16, 2022        LAW OFFICE OF THOMAS C. SEABAUGH
                                 HELM LAW OFFICE, PC
20

21

22                               By: */s/ Thomas C. Seabaugh*
                                    Thomas C. Seabaugh
23                                  Attorneys for Plaintiff

24

25

26

27

28

-21-